*259 OPINION.
Mtjrdock :
There is clear and convincing evidence in this case that by the contract of February 21, 1920, the petitioner secured two tilings of considerable value — one was 125 shares of its stock, and the other was Christensen’s agreement to refrain from engaging in the book stitcher machine business for a period of five years. The other engagements of Christensen were only incidental and precautionary so far as Greene and the petitioner were concerned.
There were no sales, no offers or bids to guide us in determining the value of the stock, and yet probably all of the available evidence which might help us to determine this value has been presented. The petitioner contends that the fair market value of the stock was not in excess of its book value of $25,797.50. Earnings of the company up to 1919 probably do not indicate a higher value, but 1919 was a banner year and on February 21, 1920, the prospects for business in 1920 were good. On the other hand, Christensen was leaving. He had been the most important person in the business. He had invented the machines, he had manufactured them and had sold them. Greene knew but little about conducting the business, but before he agreed to the purchase of this stock, which was to make him sole owner of the corporation, he made an extensive investiga *260 tion to learn just what he would have, how much he could reasonably expect to make out of it and how much the stock was worth. He then came to the conclusion that if Christensen would agree not to compete for five years, the stock would be worth about its book value. He was of the opinion that without such an agreement the business in his hands would be a failure. There had been competition in the past, the market was small, and Christensen was in a splendid position to compete, for he knew more about the business than anyone else. We believe that it is fair and just to allocate one-half of the $60,000 to each of the two principal things purchased.
'We have now found that the petitioner paid $30,000 for Christensen’s agreement not to compete for a period of five years, but the question remains whether or not the petitioner is entitled to deduct a reasonable amount representing the exhaustion of this contract as property used in a trade or business. This question is one that is not altogether free from doubt. In a number of cases the Board has not allowed deductions for somewhat similar contracts, but in each instance it was either because the cost of the contract had not been proven or because the contract had an indefinite life. See Coca-Cola Bottling Co., 6 B. T. A. 1333; Charles P. Limbert Co., 9 B. T. A. 1390; Schuman Piano Co., 10 B. T. A. 118; Western Valve Bag Co., 13 B. T. A. 749. William Zeigler, Jr., 1 B. T. A. 186, is a case closely analogous to the present one. There, the petitioner paid $200,000 to two individuals to secure their resignation as trustees and thus permit him to have the sole control and management of the trust estate, of which he was the sole beneficiary. At that time the trust was to continue for twelve years, and although the life expectancy of one of the trustees was at least twelve years and the life expectancy of the other was only 5.1 years, and although the one whose life expectancy was twelve years died within five years and the one whose life expectancy was 5.1 years lived much longer and was still living at the time of the hearing, the petitioner was allowed to deduct one-twelfth of $200,000 in the year before the Board. We there said:
Wliat the taxpayer gave $200,000 for in 1919 was the right to exercise exclusive control of all the properties which might remain in the trust from 1919 until 1931 when the trust would terminate. He was interested in acquiring this right without regard to the possibility that one or both of the trustees might die, or, for reasons of their own, resign before 1931, and without regard to the fact that there was a likelihood of his being in control of some of the corporations before 1931. He bought a right — which, except for the purchase of it, he might never have acquired — to act as sole trustee without any interference by any other trustee over a period of 12 years, and we think the investment thus made is properly recoverable by him out of income over the entire 12-year period, and not over any shorter period.
*261 Tlie petitioner for $30,000 secured Christensen’s agreement that he would not compete for a period of five years. It thus obtained the right to conduct its business free from Christensen’s competition during a period when it was not in a strong position. This was a valuable asset in the hands of the petitioner, the benefits of which would continue over a period which would not necessarily be coextensive with the five-year period provided in the agreement. To illustrate, the petitioner in two years’ time might have so strengthened its position that Christensen’s competition could not affect it, or in the five years it might have so strengthened its position that as a consequence for one or more years thereafter Christensen’s competition would be less severe than it otherwise would have been. The fact remains, however, that as each year passed, the time was that much nearer when the benefits derived from the contract would be completely exhausted. We will not attempt to give an opinion as to when that time would be, but it is our opinion that $6,000 is a reasonable allowance for the exhaustion of the property in question for the taxable year which is before us.
The question of the deductibility of the taxes imposed by the State of Wisconsin upon the petitioner’s net income for the year 1922 is similar to the question which was decided by this Board in Ira L. Henry Co., 9 B. T. A. 540. Following the reasoning in that case, our judgment on this point is for the petitioner.

Judgment will be entered under Rule 50.